UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEL MARIN,<br><br>                     Plaintiff,<br><br>v.<br><br>CONSTANCE CARROLL; CARLOS O. TURNER CORTEZ; CRAIG MILGRIM; MARY GRAHAM; GEYSIL ARROYO; MARIA NIETO SENOUR; BERNIE RHINERSON; MARSHA GABLE; LINDA WOODS; CHERYL BARNARD; WESLEY LUNDBURG; PAMELA LUSTER; HENRY GEN; ANDREW LOWE; and BURAK CEBECIOGLU, in their official and personal capacities; and SAN DIEGO COMMUNITY COLLEGE DISTRICT,<br><br>                     Defendants. | Case No.: 21-CV-1453 JLS (DEB)<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*; (2) SCREENING AND DISMISSING PLAINTIFF'S COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2); AND (3) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>(ECF Nos. 1–3) |

      Presently before the Court are Plaintiff Mel Marin's Complaint ("Compl.," ECF No. 1); Motion to Proceed *in Forma Pauperis* ("IFP Mot.," ECF No. 2); and Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Mot.," ECF No. 3). Having carefully considered Plaintiff's filings and the applicable law, the Court **GRANTS**

1

Plaintiff's IFP Motion, **DISMISSES** Plaintiff's Complaint **WITH LEAVE TO AMEND**, and **DENIES WITHOUT PREJUDICE** Plaintiff's TRO Motion.

### *IN FORMA PAUPERIS* MOTION

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). An action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). Although the statute does not specify the qualifications for proceeding IFP, the plaintiff's affidavit must allege poverty with some particularity. *Escobeda v. Applebees*, 787 F.3d 1226, 1234 (2015). Granting a plaintiff leave to proceed IFP may be proper, for example, when the affidavit demonstrates that paying court costs will result in a plaintiff's inability to afford the "necessities of life." *Id*. The affidavit, however, need not demonstrate that the plaintiff is destitute. *Id*.

Here, Plaintiff's IFP Motion establishes that he has an income of "about $750 a month in the nature of a pension based on prior military duty." IFP Mot. at 2; *see also* Affirmation in Support of Motion to Proceed *In Forma Pauperis* ("Affidavit," ECF No. 2) at 6. Plaintiff reports having $165.00 in cash and owning a motor vehicle worth approximately $600. *See* IFP Mot. at 2–3. Plaintiff further indicates that he has two checking accounts and a savings account, although he does not provide balance information for those accounts. *See id*. at 2. Plaintiff's monthly expenses of $895.00 exceed his monthly income. *See id*. at 4–5. The Court therefore concludes that Plaintiff adequately

/ / /

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)). The additional $52 administrative fee does not apply to persons granted leave to proceed *in forma pauperis*. *Id*.

has demonstrated that paying the $402 filing fee would result in his inability to afford the necessities of life. Accordingly, the Court **GRANTS** Plaintiff's IFP Motion.

### SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)

**I.      Standard of Review**

Because Plaintiff is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2002) (per curiam) (holding 28 U.S.C. § 1915(e)(2) screening applies to non-prisoners proceeding IFP); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)). Under this statute, the Court *sua sponte* must dismiss a complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez*, 203 F.3d at 1126–27. "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

/ / /

Further, "[w]hile factual allegations are accepted as true, legal conclusions are not." *Hoagland v. Astrue*, No. 1:12-cv-00973-SMS, 2012 WL 2521753, at *3 (E.D. Cal. June 28, 2012) (citing *Iqbal*, 556 U.S. at 678). Courts cannot accept legal conclusions set forth in a complaint if the plaintiff has not supported his contentions with facts. *Id.* (citing *Iqbal*, 556 U.S. at 679).

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.*

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.'" *Khoja*, 899 F.3d at 999 (quoting *Lee*, 250 F.3d at 689). "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.* (citing *Lee*, 250 F.3d at 689).

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431(7th Cir. 1993)). "'[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document' under *Ritchie*." *Khoja*, 899 F.3d at 1002 (quoting *Coto Settlement v. Eisenberg*,

593 F.3d 1031, 1038 (9th Cir. 2010)).  Nonetheless, a document may still form the basis of the plaintiff's claim where "the claim necessarily depended on the[ document]." *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).  "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.*  When a document is incorporated by reference, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908; *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("The court may treat . . . a document [incorporated by reference] as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'") (citing *Ritchie*, 342 F.3d at 908).  Nonetheless, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.

Courts have a duty to construe a *pro se* litigant's pleadings liberally.  *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The district court should grant leave to amend if it appears "at all possible that the plaintiff can correct the defect," unless the court determines that "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990)).

## II.   Plaintiff's Factual Allegations

Plaintiff alleges that he is a student in the San Diego Community College District ("SDCCD").  Compl. ¶ 1.  Plaintiff claims that on "March 16, 2020 library access was stopped by the college because of the threat of spread of the COVID virus, in order to keep students separated." *Id.* ¶ 4.  He claims that "[a]ll students were informed that they had a duty to continue the class only 'online' but were denied access to computers for this purpose although the college had the financial and physical ability to loan computers to students." *Id.* ¶ 5.  Plaintiff alleges he had a laptop computer, but it had "no internet access

built-in and [he] had to go to a 'wifi' location to reach course material and watch lectures and to take tests[.]" *Id.* ¶ 6. Plaintiff alleges that because of his indigency, he could not afford to pay for wifi service. *Id.* ¶ 8. Plaintiff claims he would "go to those establishments [with wifi] and sit outside on the concrete with his laptop until restaurant management or security or police told him to get out, or the establishment wifi signal randomly stopped." *Id.* ¶ 7. This situation made him "violate state COVID 'stay at home' orders from Governor Newsom[.]" *Id.*

Further, Plaintiff is "a disabled Army veteran with injuries resulting from explosions near his head while on active duty." *Id.* ¶ 36. Plaintiff claims that his "eye disability . . . prevented him from seeing computer screen images clearly, and . . . made screen navigation so slow because he kept getting lost because of his eye injuries that he needed 5 hours on computer to do the homework that healthy students could do in 1 hour." *Id.* ¶ 10. Due to these circumstances, Plaintiff "was given F grades from missing material in the next few weeks." *Id.* ¶ 11. Plaintiff sought and received an accommodation from the SDCCD disability office; however, plaintiff claims this was "only 'token' to give an impression that something was being done." *Id.* ¶ 12. The college granted Plaintiff "2 ½ more hours to do tests for each hour others get[.]" *Id.* Plaintiff's professor granted Plaintiff an opportunity to make up the work Plaintiff was not able to complete before the accommodation; however, "he gave [Plaintiff] 5 days to make up 8 tests and lab reports that he gave the healthy students two weeks to finish." *Id.* ¶ 13. Plaintiff claims "the teacher's offer was fake or 'pretextual', because he knew petitioner had no physical ability to make-up that work in 5 days with [Plaintiff]'s medical problems and without buying the latest computer technology." *Id.* ¶ 15. Plaintiff claims that, for these reasons, he "was forced to drop the class by the May 8 deadline to avoid a grade, although he had a clear 'A' average in his tests and labs before the crisis started." *Id.* ¶ 16.

In addition, Plaintiff takes issue with Defendants' rule that "bars students from in-person instruction hereafter if the student cannot show proof of COVID vaccination even if the unvaccinated student wears a mask." *Id.* ¶ 132. He claims that this "rule *allows* only

students who are otherwise healthy . . . [and] bars students with medical conditions that caution against a vaccine[.]" *Id.* ¶ 134 (emphasis in original). Plaintiff is a disabled veteran with medical issues who, as a result, allegedly is barred from attending classes. *Id.* ¶¶ 135, 137. Plaintiff further claims that the decision whether to get the vaccine is protected First Amendment expression, *see id.* ¶ 136, and that the policy is counter to AB-86, which "bars any school from denying in-person instruction to students who fail to provide proof of vaccination," *id.* ¶ 140.

Plaintiff asserts eight claims: (1) declaratory judgment, injunction, and damages; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) declaratory judgment, injunction, and damages; (6) declaratory judgment, injunction, and damages; (7) declaratory judgment, injunction, and damages; and (8) damages. *See generally* Compl. Plaintiff brings his claims against SDCCD; Miramar College biology professor Henry Cen, Department Chair Andrew Lowe, Dean of Science Linda Woods, Dean of Students Cheryl Barnard, President Marsha Gable, and Chancellors Constance Carroll and Carlos O. Turner Cortez; Mesa College President Pamela Luster; City College professor Burak Cebecioglu; SDCCD Trustees Craig Milgrim, Mary Graham, Geysil Arroyo, Maria Nieto Senour, and Bernie Rhinerson; and Wesley Lundberg. *See* Compl. at 1; *id.* ¶¶ 6, 13, 66, 79, 89, 115, 130.

III. Analysis

    A.    **Federal Claims**

        1.    *Eleventh Amendment Immunity*

As an initial matter, "the Eleventh Amendment bars suits against a state brought by its own citizens, whether the relief sought is money damages or an injunction." *Seater v. Cal. State Univ., Fullerton*, 48 F.3d 1228 (9th Cir. 1995) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986)). "Moreover, agencies of the state, such as California state colleges and universities, are similarly immune from private damage actions or suits for

injunctive relief brought in federal court pursuant to 42 U.S.C. § 1983." *Id.* (citing *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988)). The Ninth Circuit explicitly has held that Eleventh Amendment immunity applies to California community college school districts. *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 972 (9th Cir. 1994) (holding community college districts are entitled to Eleventh Amendment immunity as dependent instrumentalities of the state of California) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)); *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992) (holding school districts in California are considered agents of the state to which Eleventh Amendment immunity extends).

Further, a state official sued in his or her official capacity for damages is not a "person" for the purposes of 42 U.S.C. § 1983. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). The Supreme Court has determined that official-capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer. *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, a defendant sued in his or her official capacity possesses the same sovereign immunity as that governmental entity, and the Eleventh Amendment prohibits damages actions against him or her. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

Here, Plaintiff sues SDCCD, as well as SDCCD faculty and administrators and members of the SDCCD board of trustees in their official capacities. Section 1983 does not express the requisite unequivocal intent to abrogate states' Eleventh Amendment immunity from suit, *Quern v. Jordan*, 440 U.S. 332, 342 (1979), and California has not waived its Eleventh Amendment immunity as to such claims. However, "[Ninth Circuit] precedent is clear that the State waived its Eleventh Amendment immunity under Section 504 of the Rehabilitation Act by accepting federal funds." *Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 793 (9th Cir. 2004) (citations omitted). Accordingly, SDCCD is

immune from suit as to all of Plaintiff's federal claims save the first; thus, to the extent Plaintiff seeks to assert those claims against SDCCD directly, they are frivolous and must be dismissed. *Seater*, 48 F.3d 1228 (citing *Atascadero State Hospital*, 473 U.S. at 241; *Mitchell*, 861 F.2d at 201; *Shaw*, 788 F.2d at 603–04; *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). Further, the SDCCD faculty, administrators, and board members Plaintiff seeks to sue in their official capacities are immune to the extent Plaintiff seeks damages from them.

    2. *Claims 1, 5, 6, 7, & 8: Remedies Versus Claims*

Moreover, all Plaintiff's federal claims are for declaratory judgment, injunctions, damages, or a combination thereof. *See* Compl. at 2, 28, 34, 42, 47. However, declaratory relief, injunctive relief, and damages are remedies rather than standalone claims. *See Kimball v. Flagstar Bank F.S.B.*, 881 F. Supp. 2d 1209, 1219–20 (S.D. Cal. 2012) (dismissing with prejudice claim for declaratory relief because "[d]eclaratory relief is not an independent cause of action, but instead a form of equitable relief") (citation omitted); *Jones v. ABN AMRO Mortg. Grp., Inc.*, 551 F. Supp. 2d 400, 406 (E.D. Pa. 2008) (similar), *aff'd*, 606 F.3d 119 (3d Cir. 2010); *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1205 (S.D. Cal. 2010) ("Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action.'" (quoting *Cox Commc'n PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002)). This alone merits dismissal of Plaintiff's first, fifth, sixth, seventh, and eighth claims.

    3. *Claim 1: Declaratory Judgment and Injunction*

As noted *supra* in Section III.A.2, Plaintiff's first claim is subject to dismissal as asserting forms of relief rather than causes of action. Even construing Plaintiff's first claim liberally, however, as attempting to bring a claim alleging that Defendants violated section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and 34 C.F.R. part 104, *see* Compl. ¶ 26, Plaintiff's claim fails. Essentially, Plaintiff claims that he was discriminated against by Professor Cen when Professor Cen required Plaintiff to complete eight exams and lab work within five days, and that the remaining Defendants are liable "because they did not

1  stop it." *Id.* ¶ 27.  He also argues that all Defendants discriminated against him when they
2  refused to award him an "incomplete" grade in April 2020, refused to provide him with a
3  laptop computer and wifi to complete the schoolwork they assigned, and offered him a
4  "take it or leave it" choice of completing his coursework online only without providing
5  him extra time to complete the work.  *Id.* ¶¶ 28–30.

6  However, Plaintiff fails to plead basic elements of his claims.  First, to the extent
7  Plaintiff premises his claim on the failure to provide him a laptop and wifi, his claim seems
8  to be based on indigency.  *See id.* ¶ 8.  However, 34 C.F.R. § 104.4(a) provides that "[n]o
9  qualified handicapped person shall, on the basis of handicap, be excluded from
10 participation in, be denied the benefits of, or otherwise be subjected to discrimination under
11 any program or activity which receives Federal financial assistance."  Under 34 C.F.R.
12 § 104.3(j)(1), "[h]andicapped persons means any person who (i) has a physical or mental
13 impairment which substantially limits one or more major life activities, (ii) has a record of
14 such an impairment, or (iii) is regarded as having such an impairment."  Plaintiff's poverty
15 or indigence does not make him a "qualified handicapped person" under this regulation.
16 Even were indigence a handicap, however, Plaintiff also fails to allege that any Defendant
17 discriminated against him on the basis of his indigence.

18 "A plaintiff bringing suit under § 504 must show (1) he is an individual with a
19 disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits
20 of the program solely by reason of his disability; and (4) the program receives federal
21 financial assistance."  *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as
22 amended on denial of reh'g* (Oct. 11, 2001) (citation omitted).  Although Plaintiff alleges
23 that he is disabled under the Rehabilitation Act or a handicapped person under 34 C.F.R.
24 part 104 on account of his eye problems, Compl. ¶ 10, he fails to allege, much less allege
25 facts that plausibly support, that he was denied benefits "solely by reason of his disability"
26 or "on the basis of [his] handicap."  *See, e.g.*, *M.K. ex rel. Mrs. K. v. Sergi*, 554 F. Supp.
27 2d 201, 230 (D. Conn. 2008) (finding Rehabilitation Act claim not viable because
28 "plaintiffs are attempting to invoke the anti-discrimination provisions of the ADA and the

Rehabilitation Act to challenge the adequacy of the services provided by the Putnam defendants, not illegal disability discrimination"). Plaintiff does not claim that Professor Cen set a supposedly impossible accommodation or that Defendants refused to award him an "incomplete" grade because of his eye disability. Rather, Plaintiff later claims that he was denied these accommodations because of his First Amendment-protected speech. *See* Compl. ¶ 126. Accordingly, Plaintiff has not alleged adequately his first claim.

### 2. Claim 5: Declaratory Judgment, Injunction, and Damages

As noted *supra* in Section III.A.2, Plaintiff's fifth claim is subject to dismissal as asserting forms of relief rather than causes of action; however, construing the claim liberally as one claiming that "the SDCCD rules for review of grade up-grades" is unconstitutionally vague, *see* Compl. ¶¶ 96–103, 107, the claim nonetheless fails on the merits.

Plaintiff claims that he received a poor grade in an organic chemistry class from SDCCD in or around 2011 and that he petitioned in the spring of 2020 to replace that grade with an "A" he received from another institution in a comparable class. *Id.* ¶ 51. He alleges that he submitted the transcript from the other institution to SDCCD at Mesa College, but that Defendants refused to process his upgrade request because Plaintiff did not submit transcripts for all courses he had taken at all institutions he had previously attended. *Id.* Plaintiff claims the rule does not require transcripts from the other institutions, but rather only proof that a student took one equivalent course and acquired a different grade. *Id.* ¶ 52. Elsewhere, however, Plaintiff instead claims that the rule "affirmatively *requires* students to give up their 1st Amendment privacy rights over their college transcripts in other places as a condition to review of their submissions," *id.* ¶ 103 (emphasis in original), and "mandates that the student *give up* his privacy and hand over to SDCCD whatever the college demands," *id.* ¶ 104 (emphasis in original). Plaintiff also insists that "the words of the SDCCD upgrade college regulation is actually kept secret to prevent students from having 'fair warning' on what an upgrade petition should look like or say." *Id.* ¶ 101.

///

In light of these contradictory allegations, the Court is unable to find that Plaintiff plausibly has alleged that the rule in question is unconstitutionally vague. *See Anderson v. Virga*, No. 215CV1148KJMEFBP, 2017 WL 1179142, at *3 (E.D. Cal. Mar. 29, 2017) (noting that "Plaintiff's factual allegations must be taken as true in evaluating his complaint under Rule 12(b)(6), but where the allegations contradict each other, very little can be inferred factually to supply the essential elements of his claim," and finding that, "[w]hen the contradictory allegations are set aside," Plaintiff failed to state a claim), *report and recommendation adopted*, No. 215CV1148KJMEFBP, 2017 WL 2546496 (E.D. Cal. June 13, 2017). Not only does Plaintiff admit that he actually does not know the exact terms of the rule in question, he then claims that the rule has two opposing requirements (no transcripts from other institutions required versus transcripts from other institutions required as a condition to review). These inconsistent allegations make it impossible for the Court to find that Plaintiff plausibly has alleged an unconstitutionally vague policy. *See Slack v. Woodbury*, No. C19-159-RSM, 2019 WL 1957935, at *1 (W.D. Wash. May 2, 2019) (finding contradictory complaint "fails to afford defendants sufficient notice of the nature of plaintiff's claims to allow them to properly respond") (citation omitted); *Chand v. Experian Info. Sols., Inc.*, No. 16-CV-6311-YGR, 2017 WL 1046971, at *2 (N.D. Cal. Mar. 20, 2017) (in ruling on motion for sanctions, finding complaint containing "contradictory and false allegations" frivolous).

Further, Plaintiff's inability to supply the text of the rule makes it impossible for the Court to assess, at this time or in the future, whether the rule is vague. "Vagueness challenges made under the Due Process Clause 'rest on the lack of notice.' A statute or regulation is unconstitutionally vague 'if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and discriminatory enforcement.'" *Lopez v. Ayers*, No. C 08-05341 JW (PR), 2010 WL 1526476, at *7 (N.D. Cal. Apr. 14, 2010) (citing *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989)). "In a vagueness challenge, the federal court must look to the plain language of the statute, as well as

construe the statute as it has been interpreted by the state courts." *Id.* (citing *Nunez v. City of San Diego*, 114 F.3d 935, 941–42 (9th Cir. 1997)). Here, without being able to refer to and parse the language of the rule in question, the Court is incapable of determining whether it is, in fact, vague.

For the foregoing reasons, the Court finds Plaintiff has not alleged a plausible claim for unconstitutional vagueness of the SDCCD rule.

### 3. Claim 6: Declaratory Judgment, Injunction, and Damages

As noted *supra* in Section III.A.2, Plaintiff's sixth claim is subject to dismissal as asserting forms of relief rather than causes of action; but, construing the claim liberally as one for First Amendment retaliation, *see* Compl. ¶ 120, it is nonetheless deficient.

"Title 42 U.S.C. § 1983 'authorizes a remedy against state actors for constitutional violations.'" *Seater*, 48 F.3d 1228 (citing *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 971 n.5 (9th Cir. 1994)). "To state a First Amendment retaliation claim, a plaintiff must plausibly allege 'that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.'" *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)).

Plaintiff appears to assert this claim against Miramar College's Cen, Lowe, Woods, Barnard, and Gable; Chancellors Carroll and Cortez; Mesa College President Luster; and SDCCD. *See* Compl. ¶ 130. For the reasons provided *supra* at Section III.A.1, however, SDCCD is immune, as are the individuals to the extent sued for damages in their official capacities. Accordingly, the claim can only survive to the extent it seeks injunctive and declaratory relief against the individually identified Defendants and damages against them in their personal capacities.

As relevant to this claim, Plaintiff alleges that Defendants "attempt[ed] to hijack and amend a statute called the California Promise Grant." Compl. ¶ 109. Plaintiff asserts that Defendants list the California Promise Grant online as one of the types of financial aid

offered by SDCCD, but that "they denied access to that Grant by refusing to provide a link to the Board of Governor's program." *Id.* ¶ 110. Plaintiff further claims that Defendants "st[ole] the name of the Board of Governor's program" and created a program called the San Diego Promise Grant that has "onerous student duties that the Legislature of California was never told about and did not approve." *Id.* ¶ 111. Plaintiff claims that, in early 2021, he became aware of "this campaign" when he could not find the waiver form for the "original" program, and that, although disability office personnel gave him the form in April 2021 and he completed it and mailed it to the college, the Defendants, "in the continuing campaign . . . to punish [Plaintiff], . . . refused to process his BOG waiver." *Id.* ¶¶ 114–15. Plaintiff claims he then was forced to drop one of his spring 2021 classes because he could not afford it, but that he was billed for the tuition anyway and a "hold" was placed to prevent him from taking any classes in retaliation for Plaintiff's prior complaints "and for 'blowing the whistle' on their PROMISE fraud." *Id.* ¶ 116. Plaintiff claims to have sought help from many SDCCD personnel to get his waiver form processed so the hold could be removed, but that "[a]ll of them refused to process the old form for [Plaintiff] . . . because they are all under actual or implied orders from the SDCCD TRUSTEES and CHANCELLORS to keep the hold in place to retaliate against [Plaintiff] and make 100% certain he will not register for any class again at SDCCD." *Id.* ¶ 118.

Plaintiff claims that his protected activity consists of his complaints about: 2011 harassment by Mesa College for complaining about a teacher's conduct, *id.* ¶¶ 125, 62; the veteran's lounge throwing away his lunches in the fall of 2019, *id.* ¶¶ 125, 59–63, 66; Professor Cen's and SDCCD's refusal to provide him with accommodations, made to the Department of Education in May 2020, *id.* ¶¶ 125, 17; Mesa College and its president, Luster, refusing to process his spring 2020 grade upgrade request, *id.* ¶¶ 125, 51; SDCCD allegedly hiding the California Promise Grant forms to steer students to its own grant program, *id.* ¶ 125; and SDCCD refusing to remove the hold placed against him, *id.* It does not appear, however, based on the allegations in the Complaint, that Plaintiff ever made any sort of complaint, informal or otherwise, to anyone about the grade upgrade request,

the grant program, or the hold on his record. *See generally* Compl. As to the grant program and the hold, Plaintiff indicates he requested assistance, *see id.* ¶¶ 114, 117, but not that he complained about these issues.

As to the allegedly retaliatory acts, Plaintiff claims these consisted of throwing away his food, barring him from making prints in the veteran's lounge at Mesa College, refusing his accommodation requests at Miramar College, refusing to process his tuition waiver, and placing and refusing to remove a fake hold on his SDCCD account. *Id.* ¶ 126. However, the only Defendants Plaintiff alleges engaged in this retaliation, in the form of refusing the accommodation requests, are Cen, Lowe, Woods, Barnard, Gable, and Carroll. *See id.* ¶¶ 6, 13. Because Plaintiff fails to allege any retaliatory activity by Luster or Cortez, the claim must fail as to them. As to the remaining Defendants, Plaintiff has failed to allege facts that, taken as true, would establish that a person of ordinary firmness would be deterred from engaging in the alleged constitutionally protected conduct because of their refusal to provide him with a laptop and wifi and/or more extra time to complete lab work and exams, or would show that Plaintiff's exercise of his free speech rights was the "but for" cause of these actions. Accordingly, Plaintiff fails to state a plausible retaliation claim as to any Defendant.

        4.     *Claim 7: Declaratory Judgment and Injunction; Claim 8: Damages*

As noted *supra* in Section III.A.2, Plaintiff's seventh and eighth claims are subject to dismissal as asserting forms of relief rather than causes of action. Nonetheless, construing the claims liberally as attempting to bring a cause of action alleging that Defendants' Covid-19 policy violates various rights protected by the U.S. Constitution, *see* Compl. ¶¶ 131–58, the Court finds that Plaintiff fails to state a claim.

The crux of Plaintiff's claims is that the Covid-19 policy absolutely bars Plaintiff and others from attending classes in-person at SDCCD campuses absent proof of vaccination. *Id.* ¶¶ 134, 137. However, this fundamental premise is false. Given that Plaintiff submits as an exhibit to his Complaint a screenshot of an announcement on SDCCD's website declaring "Planning for a Safe Return to Campus," *see* Compl. Ex. A,

1  and that the existence and terms of such a policy form the basis of Plaintiff's claims, *see*
2  *id.* ¶¶ 131–47, the Court considers the policy to be incorporated by reference.  The San
3  Diego Community College District COVID-19 Vaccination Policy (the "Policy") clearly
4  provides, however, that students who "cannot take the COVID-19 vaccination due to
5  medical or religious reasons" "may request an exemption from the COVID-19 vaccination
6  requirement for medical or religious reasons."  *See* Policy at COVID-19 Vaccination
7  Requirements, *available at* https://www.sdccd.edu/students/covid19/.  Because the Policy
8  does have exemptions potentially applicable to Plaintiff, Plaintiff fails to state a claim on
9  the basis that he is necessarily harmed because he will not provide proof of vaccination.

10       Plaintiff's claim also seems to rely on the fact that the Policy is illegal and conflicts
11  with state law, namely AB-86.  Compl. ¶¶ 139–41.  Again, however, this is untrue.  Once
12  more, Plaintiff quotes from AB-86 and provides a citation to the bill, so the Court considers
13  AB-86 incorporated by reference into the Complaint.  By its plain language, AB-86, which
14  added Article 8 to Chapter 1 of Part 19 of Division 1 of Title 1 of the California Education
15  Code (titled "COVID-19 Reporting and Public Health Requirements") applies to public
16  and private schools "maintaining kindergarten or any of grades 1 to 12, inclusive."  *See*
17  Cal. Educ. Code § 32090(a)(1).  Thus, on its face, AB-86 does not apply to postsecondary
18  institutions like SDCCD.  *See, e.g.*, *Karasek v. Regents of the Univ. of Cal.*, No. 15-CV-
19  03717-WHO, 2015 WL 8527338, at *18–19 (N.D. Cal. Dec. 11, 2015) (rejecting argument
20  that provision applied to postsecondary institution when definition of included institutions
21  included "public or private preschool[s], elementary, or secondary school[s] or
22  institution[s]").  While Plaintiff cites to *Brown v. Li* for the proposition that "laws
23  protecting students in elementary schools apply to state colleges as well," Compl. ¶ 143
24  (citing 308 F.3d 939, 949 (9th Cir. 2002), *Brown* is inapposite.  Here, Plaintiff raises a
25  straightforward issue of statutory construction, while *Brown* dealt with an issue of first
26  impression concerning First Amendment jurisprudence.  Even assuming AB-86 applied to
27  SDCCD, the fact that "section [32092] shall not be construed as inferring that vaccination
28  of school staff or pupils is a prerequisite for providing in-person instruction" is not a bar to

1 the implementation of such prerequisites, despite Plaintiff's allegations to the contrary.
2 Cal. Educ. Code § 32092(d); *see* Compl. ¶ 140. Thus, to the extent Plaintiff contends that
3 the Policy is illegal due to its alleged conflict with AB-86, Plaintiff's claim lacks merit.
4 Accordingly, the Court finds that Plaintiff fails to state plausible claims for declaratory and
5 injunctive relief and damages on multiple grounds.

### B. State Law Claims

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

Plaintiff also seeks to bring various California state law claims against Defendants. *See generally* Compl. Because Plaintiff has failed to allege a violation of federal law, however, the Court exercises its discretion to dismiss his pendent state law claims without prejudice. 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . [it] has dismissed all claims over which it has original jurisdiction."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Acri*, 114 F.3d at 1000.

### C. Leave to Amend

For the above-mentioned reasons, the Court finds Plaintiff's Complaint fails to state any claim upon which relief can be granted and that the Complaint must be dismissed *sua sponte* and in its entirety pursuant to 28 U.S.C. § 1915A(b)(1). Because Plaintiff is proceeding pro se, the Court, having now provided him with "notice of the deficiencies in his complaint," will also grant him an opportunity to fix them. *See Akhtar v. Mesa*, 698

///

F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

## MOTION FOR TEMPORARY RESTRAINING ORDER

Federal Rule of Civil Procedure 65(b) governs the issuance of a temporary restraining order ("TRO"). The standard for a TRO is identical to the standard for a preliminary injunction. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Worker's Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). A plaintiff seeking preliminary relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and is "never awarded as a matter of right." *Id.* at 22, 24. "Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, [the court] need not consider the remaining three [*Winter* elements]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (citing *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (internal quotation marks omitted).

When a plaintiff has not provided notice of his application to the defendant, Federal Rule of Civil Procedure 65(b)(1) imposes specific requirements prior to the issuance of a TRO. Namely:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). "The stringent restrictions imposed . . . by Rule 65[ ] on the availability of ex parte temporary restraining orders reflect the fact that our entire

jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438–39 (1974) (footnote omitted).

Accordingly, "courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). "For example, an ex parte TRO may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Id.* (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). Alternatively, "[i]n cases where notice could have been given to the adverse party, courts have recognized a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Id.* (quoting *Am. Can Co.*, 742 F.3d at 322).

Here, because Plaintiff's Complaint has not survived screening, Plaintiff has failed to establish a likelihood of success on the merits. *Keavney v. O'Brien*, No. 3:20CV1443-MMA-MSB, 2020 WL 7318120, at *5 (S.D. Cal. Dec. 11, 2020) ("[B]ecause the Court found that Plaintiff's Complaint failed to state a claim upon which Section 1983 relief may be granted, he has failed to demonstrate for purposes of preliminary injunctive relief a likelihood of success on the merits.") (citing *Thomas v. Chu*, No. 3:20-cv-00245-GPC-BGS, 2020 WL 5408944, at *10 (S.D. Cal. Sept. 9, 2020)). Nor does it appear that Plaintiff has complied with the stringent notice requirements of Federal Rule of Civil Procedure 65(b)(1) for issuance of an ex parte TRO. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's TRO Motion.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's IFP Motion (ECF No. 2), **DISMISSES** Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2) **WITH LEAVE TO AMEND** (ECF No. 1), and **DENIES WITHOUT PREJUDICE** Plaintiff's TRO Motion (ECF No. 3). The Court grants Plaintiff <u>forty-five (45) days</u> from

the date on which this Order is electronically docketed in which to file an amended complaint curing the deficiencies of pleading noted herein.  Should Plaintiff fail to file an amended complaint in accordance with this Order, the Court will enter a final order dismissing this civil action without prejudice based on Plaintiff's failure to prosecute in compliance with a court order requiring amendment.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  August 23, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge