UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEL MARIN,<br><br>                    Plaintiff,<br><br>v.<br><br>CONSTANCE CARROLL; CARLOS TURNER CORTEZ; CRAIG MILGRIM; MARY GRAHAM; GEYSIL ARROYO; MARIA NIETO SENOUR; BERNIE RHINERSON; MARSHA GABLE; GREG SMITH; LINDA WOODS; CHERYL BARNARD; WESLEY LUNDBURG; HENRY CEN; RICKY SHABAZZ; ANDREW LOWE, PAMELA LUSTER; BURAK CEBECIOGLU; MARCIANO PEREZ; AND JANE DOE IN THEIR PERSONAL AND INDIVIDUAL CAPACITIES; AND THE SAN DIEGO COMMUNITY COLLEGE, JOINTLY AND SEVERALLY,<br><br>                    Defendants. | Case No.: 21cv1453-JO-DEB<br><br>**ORDER DISMISSING PLAINTIFF'S NEWLY ALLEGED CLAIMS FROM HIS SECOND AMENDED COMPLAINT** |

1

1. On January 26, 2024, *pro se* Plaintiff Mel Marin filed a Second Amended Complaint alleging that he faced both discrimination on account of his disability and retaliation for complaining about this discrimination from various college officials while he was a student at different schools in the San Diego Community College District ("SDCCD"). Dkt. 40. After *sua sponte* screening this amended complaint pursuant to 28 U.S.C. § 1915(e)(2), the Court dismisses Plaintiff's newly added claims.

2. Plaintiff's Second Amended Complaint succeeds his First Amended Complaint, Dkt. 20, which the Court dismissed in part after screening pursuant to 28 U.S.C. § 1915(e)(2), Dkt. 25. There, the Court found that Plaintiff sufficiently pled violations of Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act against SDCCD and a First Amendment retaliation claim against Miramar College Professor Cen. *Id*. It dismissed all of his other claims. *Id*. Specifically, the Court dismissed with prejudice Plaintiff's claims for injunctive relief for lack of standing and his 42 U.S.C. § 1983 claims against individual defendants for implementing college policies as barred by the Eleventh Amendment. *Id*. The Court dismissed his § 1983 First Amendment retaliation claims against individual defendants aside from Professor Cen on the grounds that he did not adequately allege their personal participation but gave Plaintiff leave to amend so that he may clarify their involvement. *Id*. The Court also dismissed Plaintiff's state law claims for negligent supervision because he failed to allege that he complied with the California Torts Claim Act but gave him leave to amend to specify whether he had complied with this exhaustion requirement. *Id*.

3. Plaintiff's Second Amended Complaint[1] now alleges eight claims under federal and state law against Defendant SDCCD and the following individual defendants in their personal capacity: (1) Mesa College President Pamela Luster ("Mesa President"); (2) Miramar College Professors Henry Cen and Andrew Lowe ("Miramar Professors"); (3)

---

[1] The Court grants Plaintiff's request to amend, Dkt. 39, and, in this order, screens the entirety of his amended pleading pursuant to 28 U.S.C. § 1915(e)(2).

Miramar College Senior Staff Cheryl Barnard, Linda Woods, and Marsha Gable ("Miramar Senior Staff"); (4) Miramar College President Wesley Lundburg ("Miramar President"); (5) San Diego City College Professor Burak Cebecioglu ("City College Professor"); (6) San Diego City College President Ricky Shabazz ("City College President"); (7) San Diego City College Vice President Marciano Perez ("City College VP"); (8) San Diego City College Financial Aid Director JANE DOE ("City College Aid Director"); (9) SDCCD Officers Constance Carroll and Carlos Turner Cortez ("SDCCD Officers"); (10) SDCCD Trustees Craig Milgrim, Mary Graham, Geysil Arroyo, Maria Nieto Senour, and Bernie Rhinerson ("SDCCD Trustees"); and (11) SDCCD Chancellor Greg Smith ("SDCCD Chancellor") (collectively, "Individual Defendants"). Dkt. 40.

4. Plaintiff's eight causes of action allege the following: (1) SDCCD violated § 504 of the Rehabilitation Act; (2) SDCCD violated Title II of the ADA; (3) all Individual Defendants aside from SDCCD Officer Cortez violated California Civil Code § 5.l(f) (the Unruh Act); (4) SDCCD Trustees and Officer Carroll, and Miramar Senior Staff, Professor Lowe, and President Lundburg committed negligent supervision in violation of California law; (5) SDCCD Trustees and Officer Carroll, and Miramar Senior Staff and Professors violated Plaintiff's Fourteenth Amendment rights pursuant to § 1983 in retaliating against him for exercising his First Amendment rights; (6) Mesa College President Luster committed intentional and negligent infliction of emotional distress in violation of California law; (7) all Individual Defendants aside from SDCCD Officer Cortez violated Plaintiff's substantive due process rights in discriminating against him on account of his disability; and (8) all Individual Defendants committed the tort of interference with trade or prospective economic advantage in violation of California law. *Id.* Plaintiff requests injunctive and monetary relief under § 504 of the Rehabilitation Act and only monetary relief for the rest of his claims. *Id.*

5. Pursuant to its *sua sponte* screening obligations under 28 U.S.C. § 1915(e)(2), the Court now addresses each of Plaintiff's newly added claims. As the Court has already

screened Plaintiff's first and second claims and fifth claim with respect to Professor Cen, the Court begins by evaluating Plaintiff's third claim. *See* Dkt. 25

5. <u>Third Claim</u>: Plaintiff's third claim alleges that Individual Defendants[2] violated the Unruh Act by discriminating against him for his disability.[3] The Court dismisses this claim for failure state a claim pursuant to Federal Rule of Civil 12(b)(6).

"The Unruh Act, [California] Civ. Code § 51, is a public accommodations statute that focuses on discriminatory behavior by business establishments." *Stamps v. Superior Ct.*, 136 Cal. App. 4th 1441, 1452 (2006). To state an Unruh Act claim, plaintiffs must plead that a business establishment denied them its "full and equal accommodations, advantages, facilities, privileges, or services." Cal. Civ. Code § 51(b); *Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012) (internal citation omitted). The Unruh Act only protects individuals from discrimination by business establishments, not public schools. *Brennon B. v. Superior Ct.*, 13 Cal. 5th 662, 692 (2022), *reh'g denied* (Aug. 31, 2022) (establishing that public schools are not business establishments for purposes of the Unruh Act).

Here, the Court finds that Plaintiff fails to state a claim for relief under the Unruh Act because his grievance focuses on discrimination by a school and school employees rather than a "business establishment." Plaintiff alleges that school officials and employees within SDCCD failed to accommodate his disability while he was enrolled in their schools. *See generally* Dkt. 40. Because schools are not "business establishments" within the meaning of the Unruh Act, Plaintiff has no viable claim under this statute. *See Brennon*, 13 Cal. 5th at 692. As Plaintiff's claims pertain exclusively to the community college context, any leave to amend of this cause of action would be futile. *Miller v. Rykoff–Sexton,*

---

[2] Plaintiff brings this claim against all Individual Defendants aside from SDCCD Officer Cortez.
[3] In addition, Plaintiff cites Cal. Gov. Code § 11135. Dkt. 40 at 52. However, aside from listing the statute, Plaintiff's allegations are exclusive to the Unruh Act, and thus, do not appear to apply to § 11135. Accordingly, the Court does not address whether Plaintiff has stated a plausible claim for relief under § 11135.

*Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("[A]mendment is futile . . . if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."). The Court therefore dismisses this claim without leave to amend.

6. <u>Fourth Claim</u>: Plaintiff's fourth claim alleges that SDCCD Officer Carroll, SDCCD Trustees, Miramar College Senior Staff, Miramar Professor Lowe, and Miramar President ("Supervisor Defendants") all committed negligent supervision. Specifically, Plaintiff asserts that when he notified them that Professors Cen and Lowe and Miramar Senior Staff were discriminating against him for his disability, the Supervisor Defendants above them did not intervene and remedy the problem, leaving Plaintiff with no option but to drop his class. Dkt. 40 at 55–58. The Court dismisses this claim for failure to state a claim pursuant to Federal Rule of Civil 12(b)(6).

An employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee. *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006). "Liability for negligent hiring and supervision is based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). Accordingly, a plaintiff must establish that the employer "hired" the employee before it can prove that the employer negligently supervised the employee. *Jackson v. AEG Live, LLC*, 233 Cal. App. 4th 1156, 1187–88 (2015). An employer may be liable for negligent supervision only if it knows that the employee is "a person who could not be trusted to act properly without being supervised." *Juarez v. Boy Scouts of Am.*, 81 Cal. App. 4th 377, 395 (2000) (internal citations and quotation marks omitted). Thus, a plaintiff must show that (1) the defendant hired and employed the employee; (2) the defendant was a person in a supervisorial position over the employee; and (3) the defendant had prior knowledge of the employee's propensity to do the bad act. *Delfino*, 145 Cal. App. 4th at 815.

Here, Plaintiff's negligent supervision claim fails because he has not alleged that any of the Supervisor Defendants employed Professors Cen and Lowe and Miramar Senior Staff. To begin, Plaintiff has not pled that any of the Supervisor Defendants either employed, hired, or had supervisory authority over Professors Cen and Lowe or Senior Staff, which are essential elements of this claim. Moreover, Plaintiff could not cure this error by pleading any differently because as staff at Miramar College, these Defendants are employed by a state entity—not an individual, let alone any of the Supervisor Defendants. *See AEG Live,* 233 Cal. App. 4th at 1187–88. Without being able to establish that any of these individuals were employers of Professors Cen and Lowe and Miramar Senior Staff, Plaintiff cannot plausibly allege negligent supervision, rendering any leave to amend futile. *Miller*, 845 F.2d at 214. The Court therefore dismisses this claim without leave to amend.

7. <u>Fifth Claim</u>: Plaintiff's fifth claim alleges that SDCCD Officer Carroll, SDCCD Trustees, Miramar College Senior Staff, and Miramar College Professors Cen and Lowe ("Retaliation Defendants") retaliated against him in violation of the First Amendment because he complained about Professors Cen's and Lowe's refusal to provide accommodations. While the Court has found that Plaintiff stated a plausible claim for relief for Professor Cen, it dismisses Plaintiff's First Amendment retaliation claims against Individual Defendants SDCCD Officer Carroll, SDCCD Trustees, Miramar College Senior Staff, and Miramar College Professor Lowe for failure state a claim pursuant to Federal Rule of Civil 12(b)(6).

"To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. County of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (internal citations and quotation marks omitted). In order to find a defendant directly liable, a plaintiff must demonstrate that the defendant had an "intent to inhibit speech," *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999), and that

there was a "causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal citation and quotation marks omitted). In addition, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. at 399. "An allegation is not plausible where there is an obvious alternative explanation for alleged [retaliatory] misconduct." *Capp*, 940 F.3d at 1055 (internal citations and quotation marks omitted).

In addition to suing the retaliating individual, a plaintiff may also bring a First Amendment retaliation claim against that person's supervisor for acquiescing in the retaliation. In order to establish liability for a supervisor's acquiescence, a plaintiff must show that the defendant had (1) "supervisory authority" over the retaliating individual; (2) knew of the constitutional violation committed by his subordinate; and (3) acquiesced in the violation by not intervening. *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 724 (9th Cir. 2022); *see OSU Student All. v. Ray*, 699 F.3d 1053, 1075 (9th Cir. 2012) ("[A]llegations of facts that demonstrate an immediate supervisor knew about the subordinate violating another's federal constitutional right to free speech, and acquiescence in that violation, suffice to state free speech violations under the First and Fourteenth Amendments.").

Here, Plaintiff's retaliation claim against Professor Lowe fails because he has not adequately alleged that Professor Lowe acted adversely towards him *because* of his complaint—the First Amendment protected activity at issue. Plaintiff contends that Professor Lowe initially discriminated against him by (1) denying Plaintiff's request to receive an "incomplete" in the class instead of poor grades for not timely completing his work; (2) informing him that he was a nuisance; and (3) instructing him that he must complete his assignments on time. Dkt. 40 at 14–16. Plaintiff alleges that when he later complained to Professor Lowe that Professor Cen failed him for not completing his work while his disability request was pending, Professor Lowe again denied Plaintiff's request

for a stay on his assignments and gave him failing grades for not completing his work. *Id.* at 16, 20–22. Plaintiff asserts that these actions were in retaliation for his comments about Professor Cen, emphasizing that Professor Lowe made these statements right after Plaintiff made his complaint. *Id.* at 62. According to Plaintiff's allegations, however, Professor Lowe had communicated this same position—that he must complete his work or get failing grades instead of an "incomplete"— *prior* to Plaintiff's complaint, undermining any causal link. *See Nieves*, 587 U.S. at 398. An "obvious alternative explanation" exists here: Professor Lowe's denial of a stay on Plaintiff's coursework could have simply been a reiteration of his earlier determination rather than an attempt to chill his speech. *Capp*, 940 F.3d at 1055. Thus, Plaintiff has not pled that his speech—his complaint about Professor Cen—was a substantial factor in Professor Len's actions. *See id*. at 1053. Without this critical element, Plaintiff fails to state a plausible First Amendment retaliation claim against Professor Lowe.

Second, the Court dismisses Plaintiff's First Amendment retaliation claim against Miramar Senior Staff because he has not sufficiently pled that they denied him access to a laptop because of his complaints to them about Professors Cen and Lowe. Plaintiff claims that the Miramar Senior Staff denied his request for a laptop computer to assist with his vision disability because he wrote to them complaining of Professor Cen and Professor Lowe's conduct. *Id.* at 16–19, 62. He further alleges that this denial was retaliatory because following his complaints, they immediately denied his request for a laptop when they provide the same accommodation to other students. *Id.* However, the speed in which the Senior Staff made this decision alone does not establish that they did so with the "intent to inhibit" Plaintiff's speech. *Mendocino*, 192 F.3d at 1032. Rather, there are several obvious alternatives. Senior Staff could have refused Plaintiff's request for a host of other reasons, proper or improper, such as failure to meet the requirements for the loan of a laptop. Because Plaintiff has not pled facts to show that Senior Staff had the intent to punish and chill his speech when they denied him a laptop, he fails to state a plausible First Amendment retaliation claim against Miramar Senior Staff. *See, e.g., Gonzalez v. Planned*

*Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014) (affirming dismissal where plaintiff's allegation was only "merely possible rather than plausible" in face of obvious alternative explanation).

Finally, Plaintiff fails to state a First Amendment claim against Professor Lowe, Miramar Senior Staff, SDCCD Officer Carroll, and SDCCD Trustees for acquiescing in retaliation. Plaintiff has not pled facts showing that these Defendants knew of but turned a blind eye to other's alleged retaliatory acts. While Plaintiff claims that he informed these Defendants of Professors Cen's, Lowe's, and Senior Staff's failure to accommodate his disability (i.e., by failing to give him extra time to complete an assignment, refusing to give him an incomplete instead of a low grade, and denying him access to a laptop), he does *not* allege that he informed the alleged supervisors of any *retaliatory* acts by the same people. Because Plaintiff does not plead that any of these Defendants had knowledge of any alleged First Amendment constitutional violations, their purported failure to take responsive action does not constitute acquiescence in a free speech violation. *OSU*, 699 F.3d at 1075. Moreover, Plaintiff has not pled facts alleging that any of these Defendants had supervisory authority over these individuals to intervene and curtail any retaliatory conduct. *See Riley's*, 32 F.4th at 724 (9th Cir. 2022). Thus, Plaintiff cannot establish a First Amendment retaliation claim under his acquiescence theory.

For the above reasons, the Court dismisses Plaintiff's First Amendment retaliation claim against Professor Lowe, Miramar Senior Staff, SDCCD Officer Carrol, and SDCCD Trustees.

8. <u>Sixth Claim:</u> Plaintiff's sixth claim alleges that Mesa College President Luster intentionally or negligently inflicted emotional distress against him when Mesa College staff threw away Plaintiff's lunches and prevented him from accessing free printing. Without opining on whether these claims validly state a claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims because they do not arise from the same set of facts as alleged in Plaintiff's federal claims. *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021); 28 U.S.C. § 1367(c). Plaintiff's federal claims all

revolve around allegations that Miramar College and City College staff denied him disability accommodations. *See generally* Dkt. 40. There is no overlap between those claims and the alleged actions of Mesa College staff to deny him access to printing services and to dispose of his lunches. Thus, Plaintiff's claim for intentional and negligent infliction of emotional distress against President Luster do not share a "common nucleus of operative fact[s]" with Plaintiff's federal claims. *Arroyo,* 19 F.4th at 1209. Accordingly, the Court cannot exercise supplemental jurisdiction here and thereby, dismisses this claim with no leave to amend but without prejudice to filing in state court.

9. <u>Seventh Claim:</u> Plaintiff's seventh claim alleges that he has a substantive due process right to an education and that Individual Defendants[4] denied him this right by discriminating against him on account of his disability. The Court dismisses this claim for failure to state a claim pursuant to Federal Rule of Civil 12(b)(6).

"The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that . . . interferes with rights implicit in the concept of ordered liberty." *Engquist v. Oregon Dep't of Agric.,* 478 F.3d 985, 996 (9th Cir. 2007) (internal citation and quotation marks omitted). The Supreme Court has interpreted this guarantee "to include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores,* 507 U.S. 292, 301–02 (1993). However, it is well established there is no enforceable federal constitutional right to public education. *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 880 (9th Cir. 2011); *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 458 (1988); *Plyler v. Doe,* 457 U.S. 202, 221 (1982).

---

[4] Plaintiff brings this claim against all Individual Defendants aside from SDCCD Officer Cortez.

Here, Plaintiff cannot plausibly allege a substantive due process claim as education is not recognized as a fundamental liberty interest protected by the Constitution.[5] *See id.* Also, additional allegations could not alter the fact that there is no legal basis upon which Plaintiff can claim a violation of a substantive due process right. The Court dismisses Plaintiff's claim without leave to amend.

10. <u>Eighth Claim</u>: Plaintiff's eighth claim alleges that all Individual Defendants committed interference with trade or prospective economic advantage against him by interfering with his ability to obtain his necessary educational credits. In doing so they purportedly obstructed his efforts to obtain a patent trade license, attend further graduate programs, and secure high-paying employment. The Court dismisses this state law claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

To establish the tort of intentional interference with prospective economic advantage, a plaintiff must show "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521–522 (1996) (internal citation and quotation marks omitted). In order to bring such a claim, a plaintiff must allege that there is a "specific existing relationship," not simply a potential future relationship, that defendant disrupted. *Id.* at 525. Without a specific existing relationship, a plaintiff's expectation for the future is at best "a hope for an economic relationship and a desire for

---

[5] Plaintiff also alleges that certain Individual Defendants are supervisory liable for depriving him of an education pursuant to § 1983. However, as Plaintiff has not adequately pled a substantive due process claim to begin with, he cannot establish supervisory liability on this basis. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.").

future benefit," which cannot be acted upon. *Id.* at 527 (internal citation and quotation marks omitted).

Here, Plaintiff fails to state a claim for intentional interference with prospective economic advantage because he has not pled an "existing relationship" with any future employers or educational institutions, let alone any relationships that Individual Defendants intentionally sought to disrupt.[6] *Id.* at 525.  Instead, Plaintiff asserts that if he had been able to complete his requisite classes at SDCCD, a series of contingent outcomes would have ensued: he would have (1) passed the patent agent examination; (2) earned enough money as a patent agent to attend a highly esteemed LLM program; (3) had sufficient funds to obtain an engineering degree; and (4) consequently, earned a very high income.  Dkt. 40 at 8–10.  However, Plaintiff has pled neither that he had an existing relationship with any institution nor alleged a likelihood of such future relationships aside from his hopeful speculations.  *Westside*, 42 Cal. App. 4th at 527.  Because Plaintiff's future plans are far too speculative and attenuated to amount to an "existing relationship," amendment would be futile here.  *Miller*, 845 F.2d at 214.  Accordingly, the Court dismisses Plaintiff's claims for intentional interference with prospective economic advantage without leave to amend.

11. In sum, the Court dismisses all of Plaintiff's newly alleged claims: his Third Claim (the Unruh Act), Fourth Claim (Negligent Supervision), Fifth Claim (First Amendment Retaliation), Sixth Claim (IIED/NIED), Seventh Claim (Substantive Due Process), and Eighth Claim (Intentional Interference with Prospective Economic Advantage).

/ / /
/ / /

---

[6] Moreover, Plaintiff has not alleged that he complied with the California Torts Act as required. *See* Cal. Gov. Code §§ 945.4, 950.2.

12. Thus, Plaintiff may proceed with his original claims: his First Claim (Rehabilitation Act) and Second Claim (ADA) against SDCCD, and Fifth Claim (First Amendment Retaliation) against Professor Cen.

**IT IS SO ORDERED**.

Dated: June 11, 2024

Honorable Jinsook Ohta
United States District Judge